# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

Eric Strobel,                                               Civil No. 11-32 MJD/AJB

      Plaintiff

v.                                                          **REPORT & RECOMMENDATION**

Provident Life and Accident Insurance
Company, and UNUM Group,

      Defendants.

---

Kurtis A. Greenley, Esq., Lindquist & Vennum, PLLP, for the plaintiff, Eric Strobel.

Terrance J. Wagener, Esq., and Molly R. Hamilton, Esq., Messerli & Kramer, P.A., for the defendant, Provident Life and Accident Insurance Company.

---

This matter was referred to the undersigned, Chief Magistrate Judge Arthur J. Boylan, by the Honorable Michael J. Davis, Chief Judge, pursuant to 28 U.S.C. § 636(b)(1)(B) [Docket No. 25], for issuance of a Report & Recommendation on the motion of plaintiff Eric Strobel to strike and dismiss defendants' preemption defense under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 et seq. (2008) [Docket No. 11], and on the motion of defendant Provident Life and Accident Insurance Company ("Provident") for partial summary judgment [Docket No. 17].[1]  Oral argument was heard on May 19, 2011, at the U.S. Courthouse, 300 South Fourth Street, Minneapolis, Minnesota 55415.

For the following reasons, the undersigned magistrate judge recommends that plaintiff's

---

[1] Provident Life and Accident Insurance Company is wholly owned by Unum Group, and both are represented by the same counsel.  See Corporate Disclosure Statement [Docket No. 2]. However, the motion for partial summary judgment is made only on behalf of Provident.

1

motion to strike and dismiss be denied, and defendant's motion for partial summary judgment be denied.

## REPORT

**I. Findings of Fact[2]**

Plaintiff graduated from the University of Minnesota Law School in 1991 and over the next several years practiced law at different firms. In 2002 he joined the firm of Hinshaw & Culbertson LLP ("Hinshaw"). In June 2005 he became a partner. At the time Hinshaw offered group long-term disability benefits to its full-time partners, associates and staff through an arrangement with Hartford Life. Affidavit of Sheila Cornyn [Docket No. 14] ¶ 2.

At about the same time, the firm was also a party to a one-page, undated "Employer Sponsored Multilife Agreement" with Provident. Affidavit of Charles Mitchell [Docket No. 21] ¶ 5, Ex. A. The Agreement provides, in relevant part:

> This is a Multilife Employer Sponsored plan of individual disability insurance. In consideration of the covenants and conditions as herein provided, the Insurance Company agrees to accept premiums in accordance with the published rates and discount for policies where premiums are so deducted and remitted. The Employer agrees, with respect to policies issued by the Insurance Company, to certain employees: . . .
>
> To make salary deductions for required premiums (100% Employee Pay) for such policies and to remit such premiums to the Insurance Company when due (Refund check will be sent to the insured when there is an overpayment).

Id. Mr. Mitchell, Provident's underwriting consultant, states, "In order to qualify for a Multilife Agreement, at least three insureds of a common employer must obtain disability insurance and

---

[2] The findings are for purposes of this motion only. As required on a motion for summary judgment, disputed facts are taken in the light most favorable to the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

their employer must sponsor the Multilife Agreement." Id. ¶ 4. Ms. Cornyn, Hinshaw's benefits manager, provides a slightly different account: "UnumProvident agreed to make available supplemental individual disability insurance policies at a discounted premium provided a minimum number of partners agreed to purchase the individual policies." Cornyn Aff. ¶ 4.

Ms. Cornyn testifies that Provident proposed, and Hinshaw approved, a two-tier eligibility arrangement whereby the firm would require partners earning more than $306,000 to purchase first-tier individual disability policies, and partners earning more than $346,000 would be given the option to purchase second-tier policies. Cornyn Aff. ¶ 5. Attached to Mr. Mitchell's affidavit are series of documents entitled "Supplemental Income Protection Plan" and "Case Summary Offer Form," which Mr. Mitchell avers "show[] the plan design, eligibility criteria and participation limits for various years between 2005 and 2010." Mitchell Aff. ¶ 7. Neither Mr. Mitchell nor any other witness offers an account of how these documents came into being, who decided their terms, and to whom they were ultimately circulated. However it is undisputed that, in addition to all full-time partners, the firm's Executive Director – a non-partner employee – purchased disability insurance through the program. See, e.g., Mitchell Aff. ¶ 8, Ex. B. at 1, 3; Ex. C.

Ms. Cornyn testifies that Provident provided "explanations and promotional materials" and application forms directly to the eligible individuals, who completed the forms. Cornyn Aff. ¶¶ 6, 7. When the policies issued, Hinshaw deducted the premiums from the individual's pay and sent a combined check to Provident. Id. ¶ 8; Mitchell Aff. ¶¶ 9, 10. Hinshaw did not retain any part of the premiums, nor did it receive any compensation from Provident for the service of providing payroll deduction. Cornyn Aff. ¶ 8.

As required by the firm, plaintiff applied for a first-tier policy.  Provident issued the policy, numbered 06-600-6173847 (the "policy" or "Disability Policy"), effective July 1, 2007. Mitchell Aff. ¶ 9 and Ex. F.  The policy was issued to plaintiff as the sole named insured.  Id.  It was fully portable, and did not require conversion.  Plaintiff had the option to pay premiums directly or to have Hinshaw collect the premiums via payroll deduction; he chose the latter.  In the event he made a claim, the policy required him to submit a notice of claim and proof of loss directly to Provident.[3]

On March 21, 2008, plaintiff suffered serious head trauma requiring immediate surgery and months of further treatment, testing and rehabilitation.  Plaintiff experienced cognitive impairment associated with traumatic brain injury, as a result of which Provident determined he was totally disabled as of June 1, 2008.  That finding is not in dispute.

Rather, the controversy centers on whether plaintiff is entitled to an additional $8,000 per month in benefits provided in a Catastrophic Disability Benefit Rider to the policy.  See Mitchell Aff. Ex. F at 600-CAT.  Provident denied those benefits on May 15, 2009; plaintiff sought reconsideration and later appealed.  After no further action was taken, plaintiff filed suit in state court on December 27, 2010.  Two days later, Provident again denied the benefits.

Provident timely removed the case to this court on the grounds of diversity jurisdiction and federal question jurisdiction.  28 U.S.C. §§ 1331, 1332.  Provident argues plaintiff's state law claims are preempted by ERISA.  Plaintiff argues ERISA does not apply, and moves to

---

[3] The record reflects plaintiff applied for and was issued a second-tier policy in 2008. Affidavit of Eric Strobel [Docket No. 15] ¶¶ 7-10 and Exs. 2 - 5.

dismiss or strike Provident's ERISA preemption defense.[4]  On these motions, the sole issue before the court is whether Provident has adequately pleaded the preemption defense, and if so, whether ERISA governs the administration of benefits under the Disability Policy.

## II.     Conclusions of Law

### A.  Motion to Strike

Plaintiff's motion to strike the affirmative defense of ERISA preemption is governed by Federal Rule of Civil Procedure 12(f), which permits a court to strike "any insufficient defense" from a pleading.  Fed. R. Civ. P. 12(f).  "Judges enjoy liberal discretion to strike pleadings under Rule 12(f)," but doing so "is an extreme and disfavored measure."  BJC Health Sys. v. Columbia Cas. Co., 478 F.3d 908, 917 (8th Cir. 2007).  "A motion to strike a defense will be denied if the defense is sufficient as a matter of law or if it fairly presents a question of law or fact which the court ought to hear."  Lunsford v. United States, 570 F.2d 221, 229 (8th Cir. 1977) (internal quotation omitted).

Rule 8(c) requires simply that "affirmative defenses" must be "affirmatively state[d]."  Fed. R. Civ. P. 8(c)(1).  The Eighth Circuit has held that the affirmative defense of limitations is "sufficiently raised for purposes of Rule 8 by its bare assertion."  Zotos v. Lindbergh School Dist., 121 F.3d 356, 361 (8th Cir. 1997) (internal quotation and emphasis omitted).  Although the Eighth Circuit has not had occasion to consider Rule 8(c) in the context of the affirmative defense of preemption, as "preemption is a purely legal defense based on readily available

---

[4] On April 28, 2011, plaintiff filed an amended complaint alleging breach and anticipatory breach of contract and seeking an award of special taxable costs under Minn. Stat. § 604.18, as well as alternative causes of action under ERISA, 29 U.S.C. §§ 1132(a)(1)(B) and 1104(a)(1) [Docket No. 39].

federal law," see Sherman v. Winco Fireworks, Inc., 532 F.3d 709, 717 (8th Cir. 2008), the Eighth Circuit would likely hold that, as with limitations, preemption "need not be articulated with any degree of specificity." Zotos, 121 F.3d at 361.

Defendant pleads, "Plaintiff's claims are preempted by the Employee Retirement [Income] Security Act of 1974 ('ERISA')." Answer [Docket No. 47] ¶ 3. The pleading states the nature of the defense, and so satisfies the requirements of Rule 8(c). Accordingly, the undersigned magistrate judge recommends that the District Judge exercise discretion and deny plaintiff's motion to dismiss or strike the ERISA preemption defense.[5]

### B. Motion for Partial Summary Judgment

Defendant's motion for partial summary judgment is governed by Federal Rule of Civil Procedure 56(a), which provides summary judgment shall issue "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citing Fed. R. Civ. P. 56(c));[6] Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986) (same); Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (same). On a motion for summary judgment, the evidence is to be viewed in the light most favorable to the nonmoving party and all justifiable inferences are to be drawn in its favor. Ludwig v. Anderson, 54 F.3d 465, 470 (8th Cir. 1995). The nonmoving party may not "rest on mere allegations or

---

[5] Plaintiff's motion does not appear to challenge the sufficiency of the pleading as such, but rather addresses itself to the question of whether ERISA governs the Disability Policy. Accordingly plaintiff's arguments and exhibits will be considered as responsive to defendant's motion for partial summary judgment.

[6] Federal Rule of Civil Procedure 56 was amended effective December 1, 2010; the summary judgment standard was previously located in Rule 56(c).

denials, but must demonstrate on the record the existence of specific facts which create a genuine issue for trial." Krenik v. County of Le Sueur, 47 F.3d 953, 957 (8th Cir. 1995) (internal quotation omitted).

ERISA "comprehensively regulates" certain employee welfare benefit plans, and contains an "expansive" preemption provision to aid in "achiev[ing] national uniformity" in regulation. Bannister v. Sorenson, 103 F.3d 632, 635 (8th Cir. 1996) (citing Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 44 (1987)). Before reaching the question of preemption, however, it is necessary to determine whether an ERISA plan exists.

Determining whether a particular benefit program is an "employee welfare benefit plan" within the meaning of ERISA is a mixed question of fact and law. Kulinski v. Medtronic Bio-Medicus, Inc., 21 F.3d 254, 256 (8th Cir. 1994). ERISA defines the term as "any plan, fund or program . . . established or maintained by an employer . . . for the purpose of providing benefits in the event of sickness, accident, disability, death or unemployment . . . ." 29 U.S.C. § 1002(1). To determine whether an ERISA plan exists, a court asks "whether from the surrounding circumstances a reasonable person could ascertain the intended benefits, beneficiaries, source of financing, and procedures for receiving benefits." Johnston v. Paul Revere Life Ins. Co., 241 F.3d 623, 629 (8th Cir. 2001) (citing Donovan v. Dillingham, 688 F.2d 1367, 1373 (11th Cir. 1982)). ERISA's implementing regulations explicitly exclude plans which cover "no employees." 29 U.S.C. § 2510.3-3(b). For purposes of these regulations, a partner is not an "employee." 29 U.S.C. § 2510.3-3(c). Thus, a program covering at least one employee is subject to ERISA, while a program covering only partners and their spouses is not. See Raymond B. Yates, M.D., P.C. Profit Sharing Plan v. Hendon, 541 U.S. 1, 21 (2004).

Here, plaintiff is a Hinshaw partner, not an employee. The Disability Policy is issued to plaintiff as the sole named insured; no Hinshaw employees are covered under the Disability Policy. Because the Disability Policy is an individual policy which covers only plaintiff and does not include any non-partner employees, the Court finds it is a plan without employees. See 29 C.F.R. § 2510.3-3; Matthew v. Unum Life Ins. Co. of Am., Civ. No. 08-4610, 2009 WL 3152042, *5 (D. Minn. Sept. 24, 2009) (unpublished) (Frank, J.); see also Robertson v. Alexander Grant & Co., 798 F.2d 868, 871 (5th Cir. 1986).

Provident argues that the Disability Policy must be viewed in a larger context, as an optional feature of the group disability coverage Hinshaw provides to both partners and employees. The court rejects this argument; plaintiff's Disability Policy is not covered by ERISA simply because Hinshaw provides other ERISA-covered benefits to its employees. A business owner's individual disability policy, "which is not, by its terms, an ERISA plan – is not converted into an ERISA plan merely because [the business] also provides ERISA benefits to [its] employees." Slamen v. Paul Revere Life Ins. Co., 166 F.3d 1102, 1105 (11th Cir. 1999); LaVenture v. Prudential Ins. Co. of Am., 237 F.3d 1042, 1047 (9th Cir. 2001); Kemp v. Int'l Bus. Mach. Co., 109 F.3d 708, 713 (11th Cir. 1997).

Alternatively, Provident argues the Disability Policy ought to be viewed as part of Hinshaw's effort to secure for its partners (and significantly, one non-partner employee) an enhanced level of disability coverage through the purchase of individual policies. It is true that a group policy covering owners and at least one employee is subject to ERISA. See Robinson v. Linomaz, 58 F.3d 365, 366 (8th Cir. 1995). It is also true that an individual disability policy which covers an employee may be subject to ERISA. See Johnston, 241 F.3d at

629.  However, courts have declined to find that an individual policy covering only an owner or partner is subject to ERISA.  See Slamen, 166 F.3d at 1105-06; LaVenture, 237 F.3d at 1047; Matthew, 2009 WL 3152042, *5.

The Disability Policy is a portable individual policy.  It is issued to, owned by, paid for by, and covers the disability of, someone who is concededly not an employee.  No employees are covered by the Disability Policy; "all of the benefits flow to the owner."  LaVenture, 231 F.3d at 1047.  Accordingly, the court concludes that the Disability Policy is not governed by ERISA.  For that reason, the court cannot find ERISA preempts plaintiff's state law causes of action, and must deny Provident's motion for partial summary judgment.

## RECOMMENDATION

Based upon the foregoing Findings and Conclusions, the undersigned magistrate judge recommends that:

1. Plaintiff's Motion to Strike or Dismiss Defendant's ERISA preemption defense [Docket No. 11] be denied.

2. Defendant's Motion for Partial Summary Judgment [Docket No. 17] be denied.

Dated:  August 3, 2011

    __s/ Arthur J. Boylan_____
    The Hon. Arthur J. Boylan
    United States Chief Magistrate Judge

Pursuant to Local Rule 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties, written objections which specifically identify the portions of the Report to which objections are made and the bases for each objection.  This Report and Recommendation does not constitute an order or judgment from the District Court and it is therefore not directly appealable to the Circuit Court of Appeals.  Written objections must be filed with the Court before **September 1, 2011.**

Unless the parties stipulate that the District Court is not required by 28 U.S.C. § 636 to review a transcript of the hearing in order to resolve all objections made to this Report and Recommendation, the party making the objections shall timely order and file a complete transcript of the hearing within ten days of receipt of the Report.